HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORMA RODRIGUEZ,

   Plaintiff,

v.

PIERCE COUNTY, a municipal corporation and local political subdivision of the State of Washington,

   Defendant.

Case No. C05-5140RBL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. SUMMARY

This matter comes before the Court on Defendant Pierce County's Motion for Summary Judgment [Dkt. #26]. Plaintiff Norma Rodriguez ("Rodriguez") asserts the following claims: retaliation; First Amendment retaliation; discrimination; constructive discharge; negligent infliction of emotional distress; and negligent hiring, retention and supervision. In support of her claims, Rodriguez cites 42 U.S.C. §2000e *et seq.*, Title VII of Civil Rights Act of 1964; RCW 49.60 *et seq.*, the Washington Law Against Discrimination ("WLAD"); 42 U.S.C. §12132, the Americans with Disabilities Act ("ADA"); and the First Amendment. Defendant Pierce County seeks dismissal of all claims.

As a preliminary matter, the Court GRANTS Plaintiff's Motion for Leave to File an Untimely Response to Motion for Summary Judgment [Dkt. #43].

**A.**  **Factual Overview**

Rodriguez was employed by Pierce County from 1991 until 2003. For approximately ten years she

ORDER
Page - 1

served as an Equal Employment Opportunity ("EEO") Officer. Betsy Sawyers ("Sawyers") began work as the Director of Personnel on August 21, 2001, when she became Rodriguez's direct supervisor. In the months that followed, a dispute arose between Rodriguez and Sawyers. The dispute continued to escalate, ultimately leading to this action.

Rodriguez maintains that the events precipitating her dispute with Sawyers can be traced as far back as 1992 when she investigated a complaint that Erik Hendrickson, a fellow employee in the Pierce County Personnel Department, had engaged in inappropriate sexual behavior. Rodriguez concluded that Hendrickson committed an infraction. Rodriguez contends Hendrickson was the subject of additional complaints in 2002.

The record indicates Sawyers implemented a more stringent method of management than her predecessors. Following several months of observation, Sawyers concluded that Rodriguez's duties did not constitute a full-time job. Additionally, Sawyers became concerned about what she perceived as excessive absenteeism by Rodriguez. In accordance with her observations and concerns, Sawyers sent Rodriguez a memo on March 28, 2002, entitled "Work Expectations." Declaration of Betsy Sawyers, Ex. A ("Sawyers Decl.") [Dkt. #27]. Rodriguez responded the following day with a memo of her own, questioning her supervisor's commitment to EEO and vehemently contesting Sawyers' previous memo. Sawyers Decl., Ex. B. A series of correspondences ensued over the next several months, with Sawyers maintaining a generally temperate tone not reciprocated by Rodriguez. Sawyers Decl., Exs. C-G.

The relationship between Rodriguez and Sawyers continued to deteriorate throughout the summer of 2002. Rodriguez felt her actions were being more closely monitored than those of her co-workers. She contends she was prohibited from bringing her child to work while other employees were not. During this time, Rodriguez complained she was being denied access to employee exit interviews that mentioned discrimination. Upon learning of the oversight, Sawyers apologized and directed that all such exit interviews be sent to Rodriguez in the future.

In response to Rodriguez's complaints, Pierce County hired The Washington Firm, a personnel consulting business, to undertake an investigation. Investigator Kristina Moris discovered no reasonable cause to sustain any of the complaints. Declaration Re: Deposition Excerpts of Norma Rodriguez, Ex. 6 [Dkt. #30]. On September 4, 2002, Rodriguez filed a discrimination and retaliation complaint with the

Washington Human Rights Commission ("HRC").

Also during the summer of 2002, an employee of the Department of Assigned Counsel ("DAC"), Raymond Howell, filed a charge of race discrimination with the HRC. Rodriguez was assigned the duty of assisting DAC with its response to the HRC complaint. She conducted an investigation and produced a corresponding report that was provided to Sawyers and Deputy Prosecutor Denise Greer. Sawyers and Greer subsequently informed Rodriguez that her report was inappropriate and required revision. Rodriguez responded by defending her initial conclusions and refusing to comply with her supervisors' revision request. On November 6, 2002, Sawyers went to Rodriguez's office to retrieve the Howell file. Rodriguez claims she was assaulted by Sawyers during this encounter. Two days later Rodriguez wrote an "Incident Report" to Labor Relations Manager Joe Carrillo, documenting her account of the alleged assault. Sawyers Decl., Ex. J. Carrillo investigated the allegations and determined them to be unfounded.

Following the alleged assault incident, Sawyers met with her boss Lyle Quasim to consider possible remedies for the deteriorating situation between herself and Rodriguez. They concluded the best solution was a transfer of Rodriguez to the Organizational and Developmental Training ("ODT") Division. The parties are not in agreement as to whether the transfer was entirely lateral or a demotion to an inferior position. Rodriguez was informed of the change (which was to take effect December 23, 2002) on December 6, 2002. She immediately went home, later returning with a doctor's note for medical leave from December 9 until December 23, 2002. On December 17, 2002, Rodriguez filed a retaliation complaint with the HRC regarding the transfer. On December 23, 2002, Rodriguez reported to the ODT, where she would work for a total of seven days.[1] She submitted another note for medical leave on January 13, 2003. The medical leave was extended several times prior to her resignation on April 21, 2003.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex*

---

[1] There were a number of factors contributing to missed work by Rodriguez between December 23, 2002, and January 13, 2003, including jury duty, a sick supervisor and the holidays.

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## III. DISCUSSION

### A. Retaliation Claim

Analysis of a retaliation claim under Title VII requires application of a three-part test for assessing the burdens and order of presentation of proof. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). First, the plaintiff must provide sufficient evidence to establish a prima facie case of retaliation by the employer defendant. *Id*. Should the plaintiff succeed in showing a prima facie case of retaliation, the burden shifts to the defendant, who must demonstrate a legitimate, non-retaliatory reason for its actions. *Id*. If the defendant satisfies its burden, the plaintiff will ultimately be responsible for the submission of evidence indicating that the defendant's proffered legitimate reason is merely a pretext for a retaliatory motive. *Id*.

#### 1. Rodriguez's Prima Facie Case of Retaliation

In order to establish a prima facie case of retaliation, the plaintiff must demonstrate that (i) she engaged in protected activity; (ii) she was thereafter subjected by her employer to an adverse employment action; and (iii) a causal link existed between the protected activity and the adverse employment action. *Id*.

The Ninth Circuit has held conclusively that one who makes a formal or informal complaint of discriminatory treatment engages in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The record indicates that Rodriguez arguably made both formal and informal complaints constituting protected action.[2] For purposes of this motion, the Court need only note that Rodriguez made the following formal complaints: on September 4, 2002, she filed a discrimination and retaliation complaint

---

[2] Furthermore, Pierce County concedes for purposes of this motion that Rodriguez's actions in relation to the Howell matter constituted "protected opposition activity." Defendant's Motion for Summary Judgment, p. 13.

with the Washington HRC; on November 8, 2002, she wrote an "Incident Report" documenting her account of the alleged assault; and on December 17, 2002, she filed a retaliation complaint with the HRC regarding her transfer to ODT. Consequently, Rodriguez has satisfied the first prong required for a prima facie showing of retaliation.

The court in *Ray v. Henderson* articulated the Ninth Circuit's standard for determining whether an employment action is adverse. There, the court found that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243. The Ninth Circuit takes an expansive view on what qualifies as adverse employment actions, having previously found that a wide array of disadvantageous changes in the workplace constitute adverse employment action. *Id.* at 1240-1243. Examples of changes in the workplace found to amount to adverse employment action include lateral transfers, transfer of duties and transfer to jobs of the same pay and status. *Id.* at 1241, *citing Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *St. John v. Employment Dev. Dep't*, 642 F.2d 273, 274 (9th Cir. 1981). Here, Rodriguez contends that her formal complaints were followed by a variety of adverse employment action, including unfair job scrutiny, disparate application of a policy prohibiting children at work, obstruction of access to job-relevant materials and ultimately a transfer to an inferior position. Viewing the facts in the light most favorable to Rodriguez, Pierce County's actions were reasonably likely to have a deterrent effect on other employees considering engagement in protected activity. As such, *Ray v. Henderson* mandates that the employer actions be classified as adverse.

In order to meet the last prong required for a prima facie showing of retaliation Rodriguez must demonstrate a causal link between the protected activity and the adverse employment action. It is well-settled that the element of causation is "highly context-specific," and that temporal proximity provides a basis from which an inference can be drawn that a causal link existed between the protected activity and the adverse employment action. *Porter*, 419 F.3d at 895, *quoting Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997); *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003). Drawing all permissible inferences in favor of Rodriguez, a correlation may reasonably be inferred between Rodriguez's complaints and the deterioration of her employment situation, including her job transfer. In sum, Rodriguez has presented a prima facie showing of retaliation.

### 2. Pierce County's Asserted Legitimate and Non-retaliatory Reason

Because Rodriguez successfully made a prima facie showing of retaliation, the burden shifts to Pierce County, who must advance a legitimate, non-retaliatory explanation for its actions. To satisfy this burden, Pierce County "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986), *quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

Pierce County denies all allegations of retaliation. Pierce County points to Rodriguez's recurring insubordination as the proffered legitimate reason for her transfer. The record reflects this reason and satisfies Pierce County's burden of production here. Therefore the burden shifts back to Rodriguez to submit evidence showing that Pierce County's proffered reason is merely a pretext for a retaliatory motive.

### 3. Rodriguez's Asserted Pretext Regarding Pierce County's Non-retaliatory Reason

The Ninth Circuit has held that a plaintiff can show pretext either "(i) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (ii) directly, by showing that unlawful discrimination more likely motivated the employer." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), *quoting Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998). The Court must consider such evidence *in toto*, considering both the direct and indirect evidence available. *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

Rodriguez offers little in the way of additional evidence of pretext beyond what has already been discussed. However, in order to show pretext, "the plaintiff is not necessarily required to introduce evidence beyond that already offered to establish her prima facie case... ." *Miller*, 797 F.2d at 732 (internal citations omitted). Here, Rodriguez submitted a declaration in support of her numerous allegations of discrimination and retaliation, which if proven at trial would bear on the issue of pretext. To reiterate, a few of these allegations include: unfair job scrutiny, disparate application of a no-children-at-work policy, unjustified reductions in her job function and transfer to a "dead-end training position ... [in] a storage area." *See* Declaration of Norma Rodriguez [Dkt. #39]. Although the record offers little evidence in support of her assertions, and largely legitimizes Pierce County's actions, there remains an "elusive factual

question" surrounding Pierce County's true motivations. *See Miller*, 797 F.2d at 733, *citing Burdine*, 450 U.S. at 255 n. 8. Because of the difficulty in ascertaining an employer's true motivations in discrimination cases, courts have repeatedly recognized that "such factual determinations [are] generally unsuitable for disposition at the summary judgment stage." *Miller*, 797 F.2d 732-733 (internal citations omitted). Consequently, for purposes of summary judgment the Court determines Rodriguez has raised a genuine issue of fact that Pierce County's non-retaliatory reason is a mere pretext. Defendant's Motion on this issue must be DENIED.[3]

## B. First Amendment Retaliation Claim

To establish a prima facie case of retaliation under the First Amendment, Rodriguez must show that (i) she engaged in protected speech; (ii) Pierce County took an "adverse employment action" against her; and (iii) her speech was a "substantial motivating factor" for the adverse action. *Thomas v. City of Beaverton*, 379 F.3d 802, 807-808 (9th Cir. 2004). As a public employee, Rodriguez's speech "is protected only if she spoke 'as a citizen upon matters of public concern' rather than 'as an employee upon matters only of personal interest.'" *Id.*, *quoting Roe v. City of San Diego*, 356 F.3d 1108, 1112 (9th Cir. 2004). If Rodriguez establishes a prima facie case, the burden shifts to Pierce County to demonstrate either that the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that the employer would have taken the same action in the absence of the employee's protected speech. *Thomas v. City of Beaverton*, 379 F.3d at 808 (internal citations omitted).

### 1. Rodriguez's Prima Facie Case of First Amendment Retaliation

Rodriguez asserts that her March 29, 2002, memo questioning Sawyers' "commitment [to] supporting and maintaining an effective equal opportunity program within [Pierce County]" qualifies as

---

[3]The Court advises Rodriguez to heed the admonition issued by the Honorable Judge Nelson in *Yartzoff v. Thomas*, 809 F.2d 1371, 1377-1378 (9th Cir. 1987):

> Our holding that summary judgment was inappropriate on some of the retaliation claims, however, should not embolden [plaintiff] in his hopes of succeeding at trial. In the face of strong evidence presented by the [defendant] showing legitimate reasons for its actions, [plaintiff's] evidence appears weak. His claims taken as a whole contain many indicia of spuriousness, and he should be cautioned by the costs of litigation. If his proof fails to sustain the claim of retaliatory employment practices, he may well suffer judgment for defense costs and attorney's fees. The trier of fact could find that the case was brought in bad faith to harass the defendant.

protected speech. Sawyers Decl., Ex. B. Washington law considers the practice of discrimination to be "a matter of state concern that ... threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic society." RCW 49.60.010. Because the EEO program seeks to address issues of discrimination, which are of public concern, Rodriguez's comments constitute protected speech. *See also Roth v. Veteran's Admin. of Gov't of U.S.*, 856 F.2d 1401, 1406 (9th Cir. 1988) (ruling that allegations concerning the waste of public funds and mismanagement of personnel constituted speech of public concern).

For purposes of summary judgment, Rodriguez has already established on her retaliation claim that Pierce County's actions constitute adverse employment action. As previously stated, there is an inherent difficulty in identifying an employer's true reasons for their actions. *Miller*, 797 F.2d 732-733. Because of this "elusive factual question," a reasonable trier of fact could determine that Rodriguez's protected speech was a substantial motivating factor for the adverse employment action. *See Miller*, 797 F.2d 733, *quoting Burdine*, 450 U.S. at 255 n. 8.

### 2. Pierce County's Asserted Legitimate Reason

Aside from Rodriguez's recurring insubordination, Pierce County offers no justification for the alleged adverse employment action. Although the record largely supports Rodriguez's insubordination as a legitimate reason, Pierce County's motivation remains an issue of fact inappropriate for summary judgment. Pierce County makes no attempt to demonstrate that their legitimate administrative interests outweigh Rodriguez's First Amendment rights or that they would have taken the same action in the absence of the employee's protected speech. Rodriguez's First Amendment retaliation claim is clouded by an "'elusive factual question' ... incapable of resolution on summary judgment." *Miller*, 797 F.2d 733, *quoting Burdine*, 450 U.S. at 255 n. 8. Therefore, Defendant's Motion on this claim is DENIED.

### C. Discrimination Claim

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court articulated a three-part test for assessing the burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. The test is roughly analogous to the analysis applied to Rodriguez's retaliation claim under *Porter*, 419 F.3d 885, 894. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Second,

if the plaintiff succeeds in proving the prima facie case the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

In order to create a prima facie case, Rodriguez must show that (i) she belongs to the protected class in question, (ii) she was qualified for the position, (iii) she was subjected to an adverse employment action, and (iv) similarly situated individuals outside of her protected class were treated more favorably. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659-660 (9th Cir. 2002), *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The Ninth Circuit has consistently held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," and "[a]t the summary judgment stage 'the requisite degree of proof . . . does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994) (internal citations omitted); *Lyons,* 307 F.3d at 1112; *Burdine*, 450 U.S. at 253.

### 1. Rodriguez's Prima Facie Case of Discrimination

Satisfying the first element necessary for a prima facie showing is the undisputed fact that as a Hispanic female, Rodriguez is a member of two protected classes. For purposes of this Motion, Pierce County concedes that Rodriguez was qualified for the job she held. *See* Defendant Pierce County's Motion for Summary Judgment, p. 22. Rodriguez contends that she was subjected to adverse employment action in a number of different fashions, including unfair job scrutiny, disparate application of a policy prohibiting children at work, obstruction of access to job-relevant materials and ultimately a transfer to an inferior position. The record does not provide strong evidence to back Rodriguez's allegations. However, the Ninth Circuit's expansive view of adverse employment action, coupled with low standard of proof required for a prima facie showing at the summary judgment stage, provide sufficient support for Rodriguez's allegations. The final element necessary for a prima facie case requires a showing that similarly situated individuals outside of her protected class were treated more favorably. Beyond Pierce County's true

motivation for transferring Rodriguez, factual disputes exist as to whether Rodriguez was given more work than female Caucasian employees, or prohibited from bringing her child to work while a female Caucasian employee was not. Therefore, without reaching judgment on the underlying claims, and solely for the purpose of summary judgment, the Court determines that Rodriguez has successfully established a prima facie case of discrimination against Pierce County.

### 2. Pierce County's Asserted Legitimate and Nondiscriminatory Reason

After Rodriguez's successful showing of a prima facie case of discrimination, the burden shifts to Pierce County to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Pierce County contends that Rodriguez was transferred as a result of her recurring insubordination, and to the extent she was treated differently, Pierce County argues that such treatment was justified because other employees did not present the same performance challenges. Pierce County's reason satisfies the burden here, and shifts the burden back to Rodriguez to raise a genuine issue of material fact as to whether Pierce County's reason here is actually a pretext for discrimination.

### 3. Rodriguez's Assertion of Pretext Regarding Pierce County's Nondiscriminatory Reason

The analysis here is identical to that already conducted with respect to Rodriguez's retaliation claim. Issues of fact persist, namely the difficulty in ascertaining Pierce County's true motivations, preventing dismissal of Rodriguez's discrimination claim at the summary judgment stage. The Court DENIES Defendant's Motion on the discrimination claim.[4]

### D. Constructive Discharge

According to the Ninth Circuit in *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000), constructive discharge occurs when discrimination in the workplace results in conditions "'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.'" *Quoting Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238 (1994); *see also Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (finding constructive discharge where a work environment is "so intolerable and discriminatory as to justify a reasonable employee's decision to [leave]"). Whether circumstances in a

---

[4]Again, the holding here should not embolden Rodriguez, as the evidence supporting her claim for discrimination is as weak as the evidence in support of her claim for retaliation.

given situation reached a level so intolerable as to justify the employee's decision to resign is ordinarily a factual determination left to a jury. *Watson*, 823 F.2d at 361.

Rodriguez alleges subjection to multiple acts of discrimination and an assault. Specifically, she contends that she was denied access to the Washington Firm's findings, accused of bias in favor of Howell and assaulted by Sawyers. Furthermore, Rodriguez indicates the conditions of her new position with ODT were intolerable. Although the record offers little support, enough of a factual issue remains to prevent dismissal of the constructive discharge claim at the summary judgment stage. Defendant's Motion on the constructive discharge claim is DENIED.

### E. Negligent Infliction of Emotional Distress

A negligent infliction of emotional distress claim can arise in the employment context so long as the basis for such a claim is not discrimination, disciplinary acts, or a personality dispute. *See Chea v. Men's Wearhouse, Inc.*, 85 Wn.App. 405, 407 (1997) (upholding negligent infliction of emotional distress judgment where supervisor grabbed an employee and used foul language). Here, Rodriguez accuses Sawyers of assaulting her in a manner beyond the scope of a disciplinary act. Rodriguez offers evidence of subsequent health issues, as did the plaintiff in *Chea*. *Id*. at 409. Although the record supporting the alleged assault is weak, there remains a genuine issue of fact precluding dismissal of this claim at the summary judgment stage. The Court therefore DENIES Defendant's Motion on this claim.

### F. Negligent Hiring, Supervision and Retention

As evidence in support of this claim, Rodriguez cites her participation in a letter from Personnel Department managers questioning Sawyers candidacy for the Director of Personnel position. The record provides no additional factual support regarding negligent hiring, supervision, and retention. Reliance on the Personnel Department letter without more is insufficient to create a genuine issue of material fact. Defendant's Motion on the negligent hiring, supervision and retention claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

Plaintiff's Motion for Leave to File an Untimely Response to Motion for Summary Judgment [Dkt. #43] is GRANTED. Upon consideration of all of the materials submitted, and for the reasons set forth above, Defendant Pierce County's Motion for Summary Judgment [Dkt. #26] is DENIED in part, and GRANTED as to Plaintiff's claim of negligent hiring, supervision and retention.

IT IS SO ORDERED.

DATED this 14th day of April, 2006.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE